UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:13-CV-70-BR

| | | |
|---|---|---|
| MINNA PAK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ORDER |
| | ) | |
| | ) | |
| UNIFUND CCR PARTNERS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the 22 May 2013 motion to dismiss (DE # 11) filed by

defendants Unifund CCR Partners ("Unifund"), ZB Limited Partnership ("ZB"), and Credit Card

Receivables Fund Inc. ("CCRF") (collectively "defendants").[1]  The period to respond and reply

to this motion has elapsed, and the matter is now ripe for disposition.

## I.  BACKGROUND

On or about 27 October 2012, Amber K. Kauffman, Esq. ("Kauffman"), an attorney with

the law firm of Sessoms & Rogers, P.A., mailed a Notice of Intent to File Legal Action ("Notice

of Intent") to plaintiff Minna Pak ("plaintiff").  (Compl., DE # 1-3, ¶¶ 11-12.)  A redacted

version of the Notice of Intent that Kauffman sent to plaintiff has been filed by defendants at

Docket Entry # 11-1.[2]  The Notice of Intent includes a copy of a Citibank Mastercard credit card

account statement addressed to plaintiff.  The statement shows an account number, the last four

---

[1] Initially, defendants Amber K. Kauffman, Esq., and Sessoms & Rogers, P.A., also joined in this motion, but all of the claims against these defendants were subsequently dismissed with prejudice by voluntary stipulation on 8 January 2014.  (DE # 31.)  Therefore, the motion to dismiss, insofar as it applies to them, is moot.  See also discussion, infra, at 4 n.3.

[2] Although the Notice of Intent was submitted by defendants, the court may consider the documents contained therein because they are integral to plaintiff's claims.  See Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (a court may consider documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic").  The court also notes that plaintiff has not claimed that the documents filed by defendants are inauthentic.

digits of which are 3237, a closing date of 26 August 2010, and a balance owed of $4,109.63. (Id. ¶ 14; Notice of Intent, DE # 11-1, at 2-5.) The documents included in the Notice of Intent also purport to show that Citibank sold plaintiff's Citibank Mastercard account to Pilot Receivables Management, LLC ("Pilot"), who, in turn, sold the account to Unifund, a general partnership whose general partners are ZB and CCRF. (Compl., DE # 1-3, ¶¶ 7, 10, 12, 14, 16, 17, 19; Notice of Intent, DE # 11-1, at 6-13.) The first page of the Notice of Intent contains the following language: "**NOTICE IS HEREBY GIVEN** THAT UNIFUND CCR PARTNERS INTENDS TO FILE A LEGAL ACTION AGAINST MINNA J. PAK, IF NECESSARY, TO ENFORCE ITS RIGHTS TO COLLECT ON THE DEBT CURRENTLY OWNED BY UNIFUND CCR PARTNERS." (Notice of Intent, DE # 11-1, at 1 (emphasis in original).)

Plaintiff contests the validity of the assignments of her debt. She maintains that the only evidence of the transaction between Pilot and Unifund is a purported bill of sale dated 1 March 2012 and signed, neither before a notary nor under oath, by Pilot Vice President Jason Kaster. (Compl., DE # 1-3, ¶ 17; Notice of Intent, DE # 11-1, at 10.) Plaintiff alleges that "[a]bsolutely no evidence indicates what accounts were supposed to have been in this portfolio, what a 'Vice President' does or knows, or how Jason Kaster acquired any personal knowledge of the business records or record[-]keeping procedures and policies of any putative creditor in the chain of custody." (Compl., DE # 1-3, ¶ 18; see also id. ¶ 20.) Accompanying the bill of sale is a three-page spreadsheet consisting mostly of blank lines except for the basic information about plaintiff's alleged account, with no mention of any other account or anything to connect it to the bill of sale. (Id. ¶ 19; Notice of Intent, DE # 11-1, at 11-13; Pl.'s Mem. Opp'n Mot. Dismiss, DE # 23, at 2.)

2

Plaintiff makes similar allegations regarding Citibank's initial assignment of the debt to Pilot. She states that the only evidence of the transaction between Citibank and Pilot is a purported bill of sale dated 21 November 2011 and signed, neither before a notary nor under oath, by Financial Account Manager Patricia Hall. (Compl., DE # 1-3, ¶ 14; Notice of Intent, DE # 11-1, at 6.) Plaintiff again alleges that the bill of sale does not specify which accounts changed hands and also does not specify "how 'Citi MasterCard,' 'Citibank (South Dakota), N.A.,' and 'Citibank, N.A.' are related, or which one(s), if any, ever really owned [plaintiff's] account . . . ." (Compl., DE # 1-3, ¶ 15.) Furthermore, plaintiff maintains that Patricia Hall had no personal knowledge of plaintiff's alleged account. (Id. ¶ 20.) The bill of sale is also accompanied by a three-page spreadsheet consisting mostly of blank lines except for the basic information about plaintiff's alleged account. (Id. ¶ 16; Notice of Intent, DE # 11-1, at 7-9.)

As a result of this allegedly insufficient chain of custody, plaintiff contends that she "owes nothing to Unifund" and that Unifund "could never prove any amount owing in a court of law, so its threat to sue was false." (Compl., DE # 1-3, ¶¶ 21, 22.) She further alleges that defendants, being experienced debt collectors, knew all of the foregoing but misrepresented her liability in order to intimidate her into paying money. (Id. ¶ 23.)

Plaintiff commenced this action in North Carolina state court on 11 March 2013. She asserts claims for violations of the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and violations of the North Carolina Collection Agency Act, N.C. Gen. Stat. § 58-70 *et seq.* On 15 April 2013, plaintiff's lawsuit was removed to this district. (Notice of Removal, DE # 1.) On 22 May 2013, defendants filed a motion to dismiss. (DE # 11.) Plaintiff responded to the

motion on 1 July 2013 (DE # 23), and defendants filed a reply on 1 August 2013 (DE # 29).[3]

## II. DISCUSSION

A.    Standard of Review

Defendants argue that plaintiff does not have Article III standing to assert her claims.  A

challenge to standing is properly considered as a challenge to subject matter jurisdiction under

Federal Rule of Civil Procedure 12(b)(1).  See, e.g., White Tail Park, Inc. v. Stroube, 413 F.3d

451, 459 (4th Cir. 2005).  The existence of subject matter jurisdiction is a threshold issue the

court must address before considering the merits of a case.  Constantine v. Rectors & Visitors of

George Mason Univ., 411 F.3d 474, 479-80 (4th Cir. 2005).  The plaintiff has the burden of

proving that subject matter jurisdiction exists.  Richmond, Fredericksburg & Potomac R.R. Co.

v. United States, 945 F.2d 765, 768 (4th Cir. 1991).  "For purposes of ruling on a motion to

dismiss for want of standing, . . . the trial . . . court[ ] must accept as true all material allegations

of the complaint, and must construe the complaint in favor of the complaining party."  Warth v.

Seldin, 422 U.S. 490, 501 (1975).  A court "may consider evidence outside the pleadings without

converting the proceeding to one for summary judgment," but "[t]he moving party should prevail

only if the material jurisdictional facts are not in dispute and the moving party is entitled to

prevail as a matter of law."  Richmond, 945 F.2d at 768.

Defendants have also moved to dismiss plaintiff's complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6), which allows a defendant to challenge the sufficiency of the plaintiff's

---

[3] Plaintiff's lawsuit also initially included claims against Kauffman; Sessoms & Rogers, P.A.; Portfolio Recovery Associates, LLC; and Donna Primrose Brown, Esq.  However, on 8 January 2014, all of plaintiff's claims against these defendants were dismissed with prejudice by voluntary stipulation.  (DE # 31.)  As a result, only the claims against Unifund, ZB, and CCRF remain.

allegations. A motion to dismiss under this rule determines only whether a claim is stated on the

facts alleged; "it does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). In

order to survive a motion to dismiss, the complaint must contain "sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This

plausibility standard does not equate to a probability requirement, but it does require more than

"a sheer possibility" that a defendant has acted unlawfully. Id. If the plaintiff has not "nudged

[her] claims across the line from conceivable to plausible," her complaint must be dismissed.

Twombly, 550 U.S. at 570; see also Iqbal, 556 U.S. at 680.

In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and

construes these facts in the light most favorable to the plaintiff[,]" but does not consider "legal

conclusions, elements of a cause of action, and bare assertions devoid of further factual

enhancement . . . ." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th

Cir. 2009). Nor does the court accept as true "'unwarranted inferences, unreasonable

conclusions, or arguments.'" Id. (quoting Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d

599, 615 n.26 (4th Cir. 2009)).

B.      Standing and Ripeness

Defendants initially argue that plaintiff lacks standing to bring this action and that, as a

result, this court does not have subject matter jurisdiction. Article III of the United States

Constitution "confines the federal courts to adjudicating actual 'cases' and 'controversies.'"

Allen v. Wright, 468 U.S. 737, 750 (1984). "Doctrines like standing . . . and ripeness are simply

5

subsets of Article III's command that the courts resolve disputes, rather than emit random advice." Bryant v. Cheney, 924 F.2d 525, 529 (4th Cir. 1991).

"The 'central purpose of the standing requirement [is] to ensure that the parties before the court have a concrete interest in the outcome of the proceedings such that they can be expected to frame the issues properly.'" ProEnglish v. Bush, 70 F. App'x 84, 87 (4th Cir. 2003) (alteration in original) (quoting Harris v. Evans, 20 F.3d 1118, 1121 (11th Cir. 1994)). To satisfy the standing requirement and confer subject matter jurisdiction, the party invoking federal jurisdiction must show that (1) she has suffered an injury in fact, (2) the injury is fairly traceable to the defendants' actions, and (3) it is likely, and not merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 154 (4th Cir. 2000) (en banc).

Here, plaintiff has sufficiently demonstrated that she suffered an injury in fact that is fairly traceable to defendants' actions based on her allegation that she had to pay a lawyer to write "a certified cease-communication letter" to Kauffman on her behalf. (Compl., DE # 1-3, ¶ 24.) Nevertheless, defendants contend that plaintiff's claims are nonjusticiable because she lacks standing to challenge the validity of the assignments of the debt based on the application of contract principles. (Defs.' Mem. Supp. Mot. Dismiss, DE # 12, at 7-13.) The court need not spend much time analyzing this argument. One of the cases cited by defendants themselves acknowledges that an obligor to an assignment, such as the plaintiff in this case, can have standing to challenge the assignment of a debt in certain instances:

> An obligor "may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void." 6A C.J.S. Assignments § 132 (2010).

These defenses include nonassignability of the instrument, <u>assignee's lack of title</u>, and a prior revocation of the assignment . . . . <u>Id.</u> Obligors have standing to raise these claims because they cannot otherwise protect themselves from having to pay the same debt twice. <u>Id.</u>

<u>Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC</u>, 399 F. App'x

97, 102 (6th Cir. 2010) (unpublished) (emphasis added), <u>cert. denied</u>, 131 S. Ct. 1696 (2011).[4]

In this case, it is clear from the face of the complaint that plaintiff is challenging the assignees'

lack of title. Thus, defendants' argument that contract principles prevent plaintiff from bringing

this action is incorrect, and the court concludes that plaintiff has standing to assert her claims

against defendants.

The court next considers the issue of whether plaintiff's claims are ripe. "The doctrine of

ripeness prevents judicial consideration of issues until a controversy is presented in 'clean-cut

and concrete form.'" <u>Miller v. Brown</u>, 462 F.3d 312, 318-19 (4th Cir. 2006) (quoting <u>Rescue

Army v. Mun. Court of L.A.</u>, 331 U.S. 549, 584 (1947)). "The burden of proving ripeness falls

on the party bringing suit." <u>Id.</u> at 319. To determine whether the case is ripe, the court balances

"the fitness of the issues for judicial decision with the hardship to the parties of withholding

court consideration." <u>Id.</u> (citation and internal quotation marks omitted). "A case is fit for

judicial decision when the issues are purely legal and when the action in controversy is final and

not dependent on future uncertainties." <u>Id.</u>

Defendants argue that plaintiff's claims against them are not ripe because "Unifund did

not file a collection suit against Plaintiff." (Defs.' Mem. Supp. Mot. Dismiss, DE # 12, at 15.)

They maintain that plaintiff's claims of false threats "rest[] upon contingent future events that

---

[4] It appears that the North Carolina Supreme Court has not addressed the exact issue presented here, and defendants have stated as much. (<u>See</u> Defs.' Mem. Supp. Mot. Dismiss, DE # 12, at 11.)

may not occur as anticipated, or indeed may not occur at all." (Id. (alteration in original) (citation and internal quotation marks omitted).)  However, under the Fair Debt Collection Practices Act, a statutory violation can be complete once the threat of a lawsuit or an attempt to collect a debt is made.  For example, a debt collector violates this statute if it "threat[ens] to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5); see also id. § 1692e(10) (prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt . . . .").  Furthermore, "[o]ther courts have noted that 'the possibility of a debt collector attempting to collect a debt that it does not actually own, either through assignment or otherwise, is very real.'" Henggeler v. Brumbaugh & Quandahl, P.C., LLO, 894 F. Supp. 2d 1180, 1188 (D. Neb. 2012) (quoting Webb v. Midland Credit Mgmt., Inc., No. 11 C 5111, 2012 WL 2022013, at *5 n.8 (N.D. Ill. May 31, 2012)).  Plaintiff's action is precisely the type of action that was intended to be protected by the Federal Debt Collection Practices Act and the North Carolina Collection Agency Act.  Thus, the court finds that plaintiff's claims are ripe and that this case is fit for judicial decision.

C.     Fair Debt Collection Practices Act Claims

The Fair Debt Collection Practices Act ("FDCPA") "protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage." United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 135 (4th Cir. 1996).  The Fourth Circuit evaluates FDCPA claims under the "least sophisticated debtor" doctrine which seeks to protect "naive consumers," while "preserving a quotient of reasonableness and presuming a basic level of understanding." Chaudhry v. Gallerizzo, 174 F.3d 394, 408-09 (4th Cir. 1999) (citation and internal quotation marks omitted).  To prevail on a

8

FDCPA claim, a plaintiff must sufficiently allege that (1) she was the object of collection activity arising from a consumer debt as defined by the FDCPA, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant engaged in an act or omission prohibited by the FDCPA. See Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011).

Section 1692e of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This section goes on to provide a non-exhaustive list of the types of practices that are considered false, deceptive, or misleading. In this case, plaintiff specifically alleges that defendants violated three of these subsections, including (1) "the false representation of . . . the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A); (2) "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken," 15 U.S.C. § 1692e(5); and (3) "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692e(10). (See Compl., DE # 1-3, ¶ 25.)

In her pleadings, plaintiff has not denied that she owes the debt in question or claimed that defendants have misstated or misrepresented the amount that she owes. Thus, she has not alleged that defendants have misrepresented the character or amount of any debt. See 15 U.S.C. § 1692e(2)(A). Rather, her allegations deal strictly with challenging the validity of the assignment documents at issue. Taking the factual allegations in the complaint as a whole and construing them as true, plaintiff's overarching contention in the complaint is that Unifund does not possess, nor could it ever possess, sufficient documentation to establish that it is the current

9

owner of the debt in question. Because Unifund represented in the Notice of Intent that it is in fact the owner of the debt, this allegedly amounts to a false representation of the legal status of the debt, violating 15 U.S.C. § 1692e(2)(A), and a false representation made in connection with an attempt to collect the debt, violating 15 U.S.C. § 1692e(10). Plaintiff also contends that defendants violated 15 U.S.C. § 1692e(5) by threatening to take legal action against her upon the false claim of owning or being owed the debt.

The court agrees that "[i]mproperly identifying oneself as the owner of a debt is certainly a misrepresentation of that debt's legal status." Cox v. Hilco Receivables, L.L.C., 726 F. Supp. 2d 659, 666 (N.D. Tex. 2010); see also Gearing v. Check Brokerage Corp., 233 F.3d 469, 472 (7th Cir. 2000) (a debt collector's misrepresentation that it was subrogated to another party "gave a false impression as to the legal status it enjoyed," which constituted a violation of 15 U.S.C. § 1692e(2)(A) and (10)). However, the analysis does not end there. The court must further determine whether plaintiff has properly pled that defendants made such a false representation in this case.

Here, the court finds that plaintiff has failed to state a claim upon which relief can be granted. She has not alleged any facts from which the court could draw a reasonable inference that defendants made a false representation regarding Unifund's ownership of the debt. Her allegations fail to plausibly show that the assignments at issue are invalid. Plaintiff emphasizes that the signatures on the assignment documents were not notarized or made under oath. (See Compl., DE # 1-3, ¶¶ 14, 17; Pl.'s Mem. Opp'n Mot. Dismiss, DE # 23, at 6 ("Without a notary stamp, no one can be sure that the signatures are genuine . . . .").) However, North Carolina law does not require an assignment to be signed under oath or notarized. Rather, "[a] valid

assignment may be made by any contract between the assignor and the assignee which manifests an intention to make the assignee the present owner of the debt." Lipe v. Guilford Nat'l Bank, 72 S.E.2d 759, 761 (N.C. 1952). As a result, an assignment of a debt need not even be in writing. See Ponton v. Griffin Bros. & Co., 72 N.C. 362, 1875 WL 2682, at *5 (N.C. 1875) ("A debt may be verbally assigned."); Webber v. McCoy Lumber Co., 303 S.E.2d 408, 410-11 (N.C. Ct. App. 1983) (finding that assignee's testimony presented at trial was sufficient evidence to establish a valid assignment). Therefore, plaintiff's allegations regarding the lack of notarization do not plausibly support her contention that the assignments at issue are void.

In further support of her argument that the assignments are invalid and that, as a result, defendants made false representations regarding Unifund's ownership of the debt, plaintiff alleges that "anybody with basic Microsoft Excel skills could have faked" the spreadsheets attached to the bills of sale.[5] (Compl., DE # 1-3, ¶¶ 16, 19). These allegations are inadequate to state a claim for relief, as there is nothing more than mere speculation and conjecture to support plaintiff's theory. See Twombly, 550 U.S. at 555. The allegations are simply too vague and conclusory to support a claim against defendants. Moreover, plaintiff's contention that the

---

[5] Defendants assert that the heightened pleading standards of Federal Rule of Civil Procedure 9(b) apply to plaintiff's claims because they sound in fraud or are grounded in fraud. (Defs.' Mem. Supp. Mot. Dismiss, DE # 12, at 13.) Defendants cite Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 781 (4th Cir. 2013), in support of their contention, but this case is not binding authority because it was decided under the Maryland Consumer Protection Act, not the FDCPA. In addition, other courts have found that FDCPA pleadings are properly measured under the Rule 8 standard, which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. See, e.g., Allgood v. West Asset Mgmt., Inc., 2013 WL 6234691, at *3 n.5 (D. Nev. Dec. 2, 2013) ("'Courts considering the issue have invariably determined the sufficiency of FDCPA pleadings by applying Rule 8 rather than Rule 9(b). . . . This is so even when a plaintiff alleges that a defendant made false representations in violation of § 1692e of the FDCPA, largely because establishing a violation of § 1692e is a substantially different matter than establishing common law fraud.'" (alteration in original) (quoting Prophet v. Myers, 645 F. Supp. 2d 614, 617 (S.D. Tex. 2008))); Neild v. Wolpoff & Abramson, L.L.P., 453 F. Supp. 2d 918, 923-24 (E.D. Va. 2006). The court need not decide this issue because regardless of whether the heightened pleadings standards of Rule 9(b) or the more liberal standards of Rule 8 apply to plaintiff's claims, the court finds that plaintiff's speculative and conclusory allegations are insufficient to state a claim under the FDCPA.

spreadsheets could have been "faked" is also implausible given the fact that plaintiff has

provided no other explanation for how her Citibank Mastercard account information along with

her private personal identifying information came to be included in the assignment documents if

not by the ownership and valid assignment of her account.[6]

In addition, plaintiff maintains that the individuals who signed the assignment documents

had no personal knowledge of certain information, including information regarding plaintiff's

alleged account; what other accounts were sold along with her account; the relationship between

three different Citibank entities who may or may not have owned plaintiff's account; and the

record-keeping procedures and policies of any putative creditor in the chain of custody.

(Compl., DE # 1-3, ¶¶ 15, 18, 20.)  However, all of these allegations are bare assertions and not

facts.  They are the sort of "conclusory" statements that are "not entitled to the assumption of

truth" when challenged by a motion to dismiss.  Iqbal, 556 U.S. at 680-81; see also Nemet

Chevrolet, 591 F.3d at 255 ("[B]are assertions devoid of further factual enhancement fail to

constitute well-pled facts for Rule 12(b)(6) purposes.").

Plaintiff also argues that because the signing agents allegedly lacked personal knowledge

of the matters described above, the bills of sale and the accompanying spreadsheets included in

---

[6] The Notice of Intent includes a copy of a Citibank Mastercard account statement that is addressed to
plaintiff.  (Notice of Intent, DE # 11-1, at 2.)  In addition, the bills of sale contained in the Notice of Intent are
accompanied by spreadsheets which describe an account where the last four digits of the account number and the
charge off amount match the last four digits of the account number and the balance listed on the Citibank Mastercard
account statement with plaintiff's name and address on it.  (Id. at 2, 7, 11.)  Even more importantly, the spreadsheets
include plaintiff's personal identifying information: her name, address, two telephone numbers, and the last four
digits of her Social Security number.  (Id. at 8, 12.)
    The spreadsheets also appear to contain plaintiff's date of birth.  (Id.)  However, the date of birth has been
redacted, presumably by defendants because Federal Rule of Civil Procedure 5.2(a) requires a party making a filing
with the court to redact certain personal information from a document.  Plaintiff's full Social Security number and
full credit card account number have been similarly redacted.  (Id. at 1-2, 7-8, 11-12.)  Plaintiff has not alleged,
either in her complaint or in her response to the motion to dismiss, that the original Notice of Intent that was sent to
her inaccurately reflected her date of birth, her full Social Security number, or her full account number.

the Notice of Intent are inadmissible hearsay under the rules of evidence and therefore cannot be used to validate the assignments of the debt. (See Pl.'s Mem. Opp'n Mot. Dismiss, DE # 23, at 7-10.) Whether the documents would be admissible in court is irrelevant here because defendants have not brought a collection action against plaintiff.[7] Plaintiff does not point to anything in the FDCPA that requires a debt collector to attach legally admissible evidence to a notice of intent to sue, and Congress surely did not intend to impose such a requirement in enacting the statute.[8] Thus, the court finds that plaintiff's argument is without merit.

In this case, plaintiff has failed to allege sufficient facts to show that the representation contained in the Notice of Intent regarding Unifund's ownership of her debt is false. She simply fails to "nudge[] [her] claims across the line from conceivable to plausible . . . ." Twombly, 550 U.S. at 570; see also Iqbal, 556 U.S. at 680. As a result, her FDCPA claims will be dismissed.

D.   North Carolina Collection Agency Act Claims

Plaintiff also asserts a claim against defendants pursuant to the North Carolina Collection Agency Act ("NCCAA"). The only purported violation of the NCCAA that is specifically referenced in plaintiff's complaint is a violation of N.C. Gen. Stat. § 58-70-110(4). (Compl., DE # 1-3, ¶ 26.) This statute precludes a collection agency from

> [f]alsely representing the character, extent, or amount of a debt against a
> consumer or of its status in any legal proceeding; falsely representing that the
> collection agency is in any way connected with any agency of the federal, State or
> local government; or falsely representing the creditor's rights or intentions[.]

---

[7] The court emphasizes that the cases cited by plaintiff in support of her position are inapposite because in each case, the debt collector filed a lawsuit against the debtor. (See Pl.'s Mem. Opp'n Mot. Dismiss, DE # 23, at 7-9.)

[8] Similarly, the North Carolina Collection Agency Act does not require a debt collector to attach legally admissible evidence to a notice of intent to sue. See N.C. Gen. Stat. § 58-70-115(5), (6) and discussion, infra, at 16-17 & n.11.

N.C. Gen. Stat. § 58-70-110(4).

With regard to the first phrase of the statute, as the court has previously observed, plaintiff has not alleged that defendants falsely represented the character, extent, or amount of the debt.  See discussion, supra, at 9.  The last part of the first statutory phrase prohibits a collection agency from falsely representing the debt's "status in any legal proceeding."[9]  N.C. Gen. Stat. § 58-70-110(4).  The NCCAA does not specifically define the term "legal proceeding."  "It is well established that '[w]here words of a statute are not defined, the courts presume that the legislature intended to give them their ordinary meaning determined according to the context in which those words are ordinarily used.'"  Powe v. Centerpoint Human Servs., 715 S.E.2d 296, 301-02 (N.C. Ct. App. 2011) (alteration in original) (quoting Reg'l Acceptance Corp. v. Powers, 394 S.E.2d 147, 149 (N.C. 1990)), disc. review denied, 721 S.E.2d 230 (N.C. 2012).  "If, as here, there is an 'absence of a contextual definition, courts may look to dictionaries to determine the ordinary meaning of words within a statute.'"  Id. at 302 (quoting Perkins v. Ark. Trucking Servs., Inc., 528 S.E.2d 902, 904 (N.C. 2000)).

The term "legal proceeding" is defined as "[a]ny proceeding authorized by law and instituted in a court or tribunal to acquire a right or to enforce a remedy."  Black's Law Dictionary 979 (9th ed. 2009); see also id. at 1324 (defining "proceeding," in part, as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment").  In this case, Unifund's representation of debt ownership in the Notice of Intent does not constitute a representation made about the debt's status in a "legal proceeding."  Although the Notice of Intent can be construed as a threat to sue,

---

[9] The court notes that the wording of this statute differs from the language used in the FDCPA, which prohibits the false representation of the "legal status" of any debt.  15 U.S.C. § 1692e(2)(A).

that threat never materialized into an actual lawsuit or legal proceeding. Furthermore, even if Unifund's representation of debt ownership in the Notice of Intent could somehow be construed as a representation made about the debt's status in a legal proceeding, plaintiff's claim would still fail because she has not alleged any facts from which the court could draw a reasonable inference that the representation was false. See discussion, supra, at 10-13. Thus, the court finds that plaintiff has failed to state a claim that Unifund falsely represented the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding.

With respect to the third phrase of § 58-70-110(4),[10] which places a prohibition on "falsely representing the creditor's rights or intentions," defendants maintain that none of them are a "creditor" to which this statute refers. The court agrees. In the complaint, plaintiff herself states that, as a debt buyer, Unifund is a "collection agency" under the NCCAA. (Compl., DE # 1-3, ¶ 7.) See N.C. Gen. Stat. § 58-70-15(b)(4). The NCCAA differentiates between creditors and collection agencies. See, e.g., N.C. Gen. Stat. §§ 58-70-15(b)(1), (2), (c)(1); 58-70-25(b)(3); 58-70-80; 58-70-105(1)(b); 58-70-120. As such, the use of the word "creditor" in § 58-70-110(4) plainly does not apply to defendants and, as a matter of law, the complaint fails to state a claim for the false representation of a creditor's rights or intentions.

In her response to the motion to dismiss, plaintiff asserts for the first time that defendants have violated other sections of the NCCAA. However, plaintiff "is bound by the allegations contained in [her] complaint and cannot, through the use of motion briefs, amend the complaint." Zachair, Ltd. v. Driggs, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), aff'd, 141 F.3d 1162 (table),

---

[10] The complaint in this case contains no allegations relating to the second phrase of the statute, i.e., that defendants have falsely represented that they are "in any way connected with any agency of the federal, State or local government." N.C. Gen. Stat. § 58-70-110(4).

No. 97-1811, 1998 WL 211943 (4th Cir. Apr. 30, 1998) (unpublished) (per curiam); see also Rouse v. Duke Univ., 869 F. Supp. 2d 674, 679 (M.D.N.C. 2012).

Nevertheless, even if plaintiff had properly asserted these additional violations in the complaint, she would still fail to state a claim upon which relief may be granted. Plaintiff first argues that defendants have violated N.C. Gen. Stat. § 58-70-115(5). (See Pl.'s Mem. Opp'n Mot. Dismiss, DE # 23, at 4, 10.) This statute requires a debt buyer who "attempt[s] to collect on [a] debt" to possess "valid documentation that the debt buyer is the owner of the specific debt instrument or account at issue . . . ." N.C. Gen. Stat. § 58-70-115(5).

Notably, § 58-70-115(5) does not state that any particular documents are necessary to establish ownership of a debt. Rather, as the court has already stated, "[a] valid assignment may be made by any contract between the assignor and the assignee which manifests an intention to make the assignee the present owner of the debt." Lipe, 72 S.E.2d at 761. Here, Unifund's Notice of Intent includes a copy of a Citibank Mastercard account statement that is addressed to plaintiff and copies of the bills of sale demonstrating the chain of title through which ownership of plaintiff's account is claimed. As the court has previously discussed with respect to the FDCPA claims, plaintiff has failed to allege any facts from which the court could draw a reasonable inference that the assignments at issue are invalid. See discussion, supra, at 10-13. Similarly, plaintiff has failed to allege any facts from which the court could draw a reasonable inference that the documentation contained in Unifund's Notice of Intent is insufficient to satisfy § 58-70-115(5).[11] Thus, even if plaintiff had asserted a claim pursuant to § 58-70-115(5) in her

---

[11] Additionally, the court remarks that the Notice of Intent sent by Unifund complies with § 58-70-115(6) of the NCCAA, which provides that a debt buyer may not bring suit against a debtor without first giving the debtor written notice of the intent to file a legal action at least 30 days in advance of filing. This statute also provides that

(continued...)

complaint, that claim would fail.

Plaintiff also contends that defendants have violated N.C. Gen. Stat. § 58-70-150. (See Pl.'s Mem. Opp'n Mot. Dismiss, DE # 23, at 4, 10.) This statute imposes a pleading requirement on debt buyers who file a complaint to collect a debt. This is apparent from its location within the NCCAA, namely, within Part 5, which is titled, "Special Requirements in Actions Filed by Collection Agency Plaintiffs." In addition, § 58-70-150 itself is titled, "Complaint of a debt buyer plaintiff must be accompanied by certain materials." The text of § 58-70-150 requires, in any "cause of action" initiated by a debt buyer, the attachment of documentation evidencing the debt, as well as any assignment of the debt, to the "complaint or claim." Thus, § 58-70-150 governs lawsuits filed to collect debts. In this case, defendants have not filed a collection action against plaintiff. Therefore, § 58-70-150 does not apply to defendants, and plaintiff cannot state a claim against them pursuant to this statute.

Finally, plaintiff maintains that defendants have violated N.C. Gen. Stat. § 58-70-155. (Id. at 4-5, 10.) This statute, which is titled, "Prerequisites to entering a default or summary judgment against a debtor under this Part," is similar to § 58-70-150 in that it imposes conditions on debt buyers who have filed an action in court to collect a debt. Again, because defendants have not filed a collection lawsuit against plaintiff, § 58-70-155 is not applicable to this case, and plaintiff cannot state a claim against defendants pursuant to this statute.

---

[11](...continued)

"[t]he written notice shall include the name, address, and telephone number of the debt buyer, the name of the original creditor and the debtor's original account number, a copy of the contract or other document evidencing the consumer debt, and an itemized accounting of all amounts claimed to be owed." N.C. Gen. Stat. § 58-70-115(6). In this case, the Notice of Intent includes all of the required information: Unifund's name, address, and telephone number (Notice of Intent, DE # 11-1, at 1); the name of the original creditor as well as the original credit card account number (id. at 1-2, 7, 11); a copy of a document (an account statement) evidencing the debt (id. at 2-5); and an itemized accounting of the amounts claimed (id. at 1).

17

The court has considered the possibility of allowing plaintiff the opportunity to amend her complaint so that she may replead her FDCPA and NCCAA claims. However, plaintiff appears to have pleaded her best case, and her response to the motion to dismiss contains no additional facts that would bolster her claims. Since it appears that amendment would not cure the deficiencies in the complaint as detailed above, plaintiff will not be permitted to amend her complaint.

## III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (DE # 11) is GRANTED. The Clerk is DIRECTED to enter judgment in favor of defendants and close the case.

This 22 January 2014.

_____
W. Earl Britt
Senior U.S. District Judge